IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**FILED**

JUL 25 2023

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

| | |
|---|---|
| RAUL GARCIA, PATTY MORA, MIGUEL RAMIREZ, KEVIN HINOJOSA, CECILIA CHAPKO, LUIS FLORES, CELSA STOREY, LINDA RAMIREZ, REYNALDO LOPEZ, SYEDA AMNA HASSAN, JUAN MEZA CALDERON, ALEJANDRO FLORES, JOEL GALVAN, JUAN PADILLA, CHRISTY GARCIA, PERLA FLORES, AND DANIEL FRANCO, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED<br><br>*Plaintiff,*<br><br>V.<br><br>WELLS FARGO BANK, N.A.,<br><br>*Defendant.* | § § § § § § § § § § § § § § § § § § § § § |

Civ. No. 5:23-cv-825-OLG

JURY DEMANDED

## PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Raul Garcia, Patty Mora, Miguel Ramirez, Kevin Hinojosa, Cecilia Chapko, Luis Flores, Celsa Storey, Linda Ramirez, Reynaldo Lopez, Syeda Amna Hassan, Juan Meza Calderon, Alejandro Flores, Joel Galvan, Juan Padilla, Christy Garcia, Perla Flores, and Daniel Franco, on behalf of themselves and all others similarly situated ("Plaintiffs"), file this First Amended Class Action Complaint against Wells Fargo Bank, N.A. ("Wells Fargo" or "Defendant"), and would show as follows:

## PRELIMINARY STATEMENT

1.      Wells Fargo has a long history of charging higher fees to Hispanic borrowers or improperly placing minority customers into subprime loans. In 2012, Wells Fargo agreed to pay $184.3 million in compensation for Hispanic and Black borrowers who were steered into subprime mortgages or who paid higher fees and rates than white borrowers because of their race or national

origin. Wells Fargo currently faces a class action lawsuit under the Fair Housing Act and other civil rights laws brought by minority consumers who received less favorable refinancing options, following a Bloomberg News report finding that Wells Fargo rejected half its Black applicants during the mortgage refinancing boom.

2.      San Antonio is a center of Wells Fargo's Bilingual telephonic customer services, which services Spanish-speaking customers from all over the country and world. Plaintiffs are current and former employees of Wells Fargo, working as Mortgage Consumer Direct Sales Consultants on the Bilingual team. Every member of the Bilingual team, including Plaintiffs, are of Hispanic ethnicity and are from Mexico.

3.      Wells Fargo forces its employees on the Bilingual team to offer predatory lending options to Spanish-speaking customers. For example, Wells Fargo has developed an "Earn the Business" program for the Bilingual team. In the fall of 2022, management created a mandatory Bilingual team program whereby employees were instructed to offer a "Refinance Cash Out" product without directly mentioning the substantial financial cost of the product to borrowers. Management implemented this policy because refinancing generally has high closing costs, ranging between $5,000 and $10,000. Managers of the Bilingual team directed employees to steer customers away from Home Equity Lines of Credit (HELOC), which carry no closing costs, and into refinancing *without disclosing the closing costs*. Team Leader Noel Gomez stressed, "It's not about asking, it's about assuming [the customer wants to cash out]." Wells Fargo provided Bilingual team members with laminated cards underlining this instruction:

**Assume the transaction will be cash out DO NOT ask if they want cash out**

4.      The Bilingual members expressed concern about this direction, noting that most of the customers served by the Bilingual team do not speak English fluently and have lower education levels. Because Wells Fargo refuses to provide Spanish language written materials, the customers served by the Bilingual team struggle to understand the terms of the documents they sign. Customers sometimes call into the Bilingual team months after closing a refinance cash out, surprised to discover they have been charged substantial closing costs. Nevertheless, management instructs the Bilingual team, "Don't mention cash out." Instead, management instructed employees to build a rapport with borrowers to gain the customers' trust.

5.      Wells Fargo's institutional racism and discrimination toward its Hispanic customers served by the Bilingual team also extends to the employees working on the team. In late 2021, Wells Fargo began a Pilot program whereby its mortgage consultants were guaranteed commissions regardless of their actual sales. Despite frequent requests, Wells Fargo refused to allow the Bilingual team (which is composed entirely of Hispanic employees who are from Mexico) to join the Pilot program. Only members of the English-only team were permitted to join the Pilot program. Wells Fargo's policy constituted intentional discrimination against Hispanic employees from Mexico. Alternatively, Wells Fargo's policy created a disparate impact for members of the Bilingual team and caused them significant financial hardship throughout the length of the Pilot program. Instead of earning guaranteed commissions based on their 2021 job performance, the Bilingual team received greatly diminished compensation in 2022 and beyond when the mortgage industry was financially devastated by rising interest rates and other financial impacts.

6.      By refusing to allow members of the Bilingual team, all of whom are Hispanic and from Mexico or other Hispanic countries, to join the Pilot program, Wells Fargo violated the law

PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT AGAINST WELLS FARGO BANK, N.A.    3

by creating a program with a disproportionately adverse effect on Hispanic members of the Bilingual team who are from Mexico or other Central and South American countries. This lawsuit is brought on behalf of all current and former Bilingual team members who were denied access to the Pilot program.

**PARTIES**

7.      Plaintiff Raul Garcia is an individual of Hispanic ethnicity from Mexico who joined the Bilingual team in 2019. Wells Fargo denied him admittance to the Pilot program beginning in late 2021 due to his membership on the Bilingual team. Plaintiff Garcia brings these claims individually and as class representative.

8.      Plaintiff Patty Mora is an individual of Hispanic ethnicity from Mexico who joined the Bilingual team in 2020. Wells Fargo denied her admittance to the Pilot program beginning in late 2021 due to her membership on the Bilingual team. Plaintiff Mora brings these claims individually and as class representative.

9.      Plaintiff Miguel Ramirez is an individual of Hispanic ethnicity from Mexico who joined the Bilingual team in February 2021. Wells Fargo denied him admittance to the Pilot program beginning in late 2021 due to his membership on the Bilingual team. Plaintiff Ramirez brings these claims individually and as class representative.

10.     Plaintiff Kevin Hinojosa is an individual of Hispanic ethnicity from Mexico who joined the Bilingual team in September 2021. Wells Fargo denied him admittance to the Pilot program beginning in late 2021 due to his membership on the Bilingual team. Hinojosa did not receive a Spanish-language differential for much of his employment with Wells Fargo despite being entitled to one as a member of the Bilingual team. Plaintiff Hinojosa brings these claims individually and as class representative.

11.     Plaintiff Cecilia Chapko is an individual of Hispanic ethnicity from Mexico who joined the Bilingual team in 2019. Wells Fargo denied her admittance to the Pilot program beginning in late 2021 due to her membership on the Bilingual team. Plaintiff Chapko brings these claims individually and as class representative.

12.     Plaintiff Luis Flores is an individual of Hispanic ethnicity from Mexico who joined the Bilingual team in 2019. Wells Fargo denied him admittance to the Pilot program beginning in late 2021 due to his membership on the Bilingual team. Plaintiff Flores brings these claims individually and as class representative.

13.     Plaintiff Celsa Storey is an individual of Hispanic ethnicity from Mexico who joined the Bilingual team in 2020. Wells Fargo denied her admittance to the Pilot program beginning in late 2021 due to her membership on the Bilingual team. Plaintiff Storey brings these claims individually and as class representative.

14.     Plaintiff Linda Ramirez is an individual of Hispanic ethnicity from Mexico who joined the Bilingual team in February 2021. Wells Fargo denied her admittance to the Pilot program beginning in late 2021 due to her membership on the Bilingual team. Plaintiff Ramirez brings these claims individually and as class representative.

15.     Plaintiff Reynaldo Lopez is an individual of Hispanic ethnicity from Mexico who joined the Bilingual team in 2020. Wells Fargo denied him admittance to the Pilot program beginning in late 2021 due to his membership on the Bilingual team. Plaintiff Lopez brings these claims individually and as class representative.

16.     Plaintiff Syeda Amna Hassan is an individual of Hispanic ethnicity from Mexico and Pakistan who joined the Bilingual team in January 2021. Wells Fargo denied her admittance

to the Pilot program beginning in late 2021 due to her membership on the Bilingual team. Plaintiff Hassan brings these claims individually and as class representative.

17.     Plaintiff Juan Meza Calderon is an individual of Hispanic ethnicity from El Salvador who joined the Bilingual team in August 2021. Wells Fargo denied him admittance to the Pilot program beginning in late 2021 due to his membership on the Bilingual team. Plaintiff Meza Calderon brings these claims individually and as class representative.

18.     Plaintiff Alejandro Flores is an individual of Hispanic ethnicity from Mexico who joined the Bilingual team in January 2021. Wells Fargo denied him admittance to the Pilot program beginning in late 2021 due to his membership on the Bilingual team. Plaintiff Flores brings these claims individually and as class representative.

19.     Plaintiff Joel Galvan is an individual of Hispanic ethnicity from Mexico who joined the Bilingual team in February 2021. Wells Fargo denied him admittance to the Pilot program beginning in late 2021 due to his membership on the Bilingual team. Plaintiff Garcia brings these claims individually and as class representative.

20.     Plaintiff Juan Padilla is an individual of Hispanic ethnicity from Mexico who joined the Bilingual team before 2021. Wells Fargo denied him admittance to the Pilot program beginning in late 2021 due to his membership on the Bilingual team. Plaintiff Padilla brings these claims individually and as class representative.

21.     Plaintiff Christy Garcia is an individual of Hispanic ethnicity from Mexico who joined the Bilingual team in March 2021. Wells Fargo denied her admittance to the Pilot program beginning in late 2021 due to her membership on the Bilingual team. Plaintiff Garcia brings these claims individually and as class representative.

22.     Plaintiff Perla Flores is an individual of Hispanic ethnicity from Mexico who joined the Bilingual team in 2019. Wells Fargo denied her admittance to the Pilot program beginning in late 2021 due to her membership on the Bilingual team. Plaintiff Garcia brings these claims individually and as class representative.

23.     Plaintiff Daniel Flores is an individual of Hispanic ethnicity from Mexico who joined the Bilingual team in February 2021. Wells Fargo denied him admittance to the Pilot program beginning in late 2021 due to his membership on the Bilingual team. Plaintiff Flores brings these claims individually and as class representative.

24.     Defendant Wells Fargo Bank, N.A. is a corporation doing business in Texas that can be served through its registered agent for service of process, CORPORATION SERVICE COMPANY, 211 E. 7th Street, Suite 620, Austin, TX, 78701-3218, USA.

## JURISDICTION AND VENUE

25.     This case is brought under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, and 42 U.S.C. § 1981.

26.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 2000e, and 42 U.S.C. § 1981.

27.     Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in the District. Specifically, Plaintiffs worked at Wells Fargo office located at 4101 Wiseman Boulevard, San Antonio, Texas 78251 (the "Wiseman Campus").

## EXHAUSTION

28.     Plaintiffs Garcia and Mora filed their Charges of Discrimination with the Equal Employment Opportunity Commission on October 27, 2022.

29.     Plaintiff Ramirez filed his Charge of Discrimination with the Equal Employment Opportunity Commission on March 29, 2023.

30.     Plaintiff Hinojosa filed his Charge of Discrimination with the Equal Employment Opportunity Commission on March 29, 2023.

31.     Other members of the Bilingual team filed their Charges of Discrimination with the Equal Employment Opportunity Commission between October 27, 2022 and the present.

32.     In total, at least thirteen members of the Bilingual team who have joined this lawsuit have also filed Charges of Discrimination. All of the Charges of Discrimination provided Wells Fargo of the collective or class-wide nature of the charge.

33.     All Charges of Discrimination with the Equal Employment Opportunity Commission were timely filed.

34.     The EEOC issued its Determination and Notice of Rights to Ramirez and Hinojosa on April 5, 2023. The EEOC issued its Determination and Notice of Rights to Garcia on June 28, 2023 and to Mora on June 29, 2023. This lawsuit is timely filed.

35.     All members of the Bilingual team who were not permitted to join the Pilot program and are of Hispanic national origin and race are permitted to join this lawsuit, whether or not they have individually exhausted their claims. All members are similarly situated. All Charges provided some notice of the collective or class-wide nature of the Charges. *Price v. Choctaw Glove & Safety Co.*, 459 F.3d 595, 599 (5th Cir. 2006).

## FACTS

36.     Wells Fargo employs a team of Mortgage Consumer Direct Sales Consultants at the Wiseman Campus.

37.     The organization was split into two groups: the Virtual to Consumer ("English team") team and the Bilingual team. The English team and the Bilingual team had similar roles and were similarly qualified, but employees on the Bilingual team are specifically hired to take Spanish-language calls.

38.     Compensation for employees on the Bilingual team is supposed to reflect their alignment to Spanish-language calls: members of the Bilingual team are meant to be paid a 5% language differential, they earned more in commissions per loan closed, and they had favorable productivity standards as compared to the English team. However, some members of the Bilingual team, including but not limited to Kevin Hinojosa, were regularly denied language differential pay.

39.     According to Wells Fargo, its mortgage organization has two groups: the servicing group and the origination group. The servicing group handled customer calls about escrows, payoff requests, or anything servicing related, and the origination group handled new loans, customers calling the 800 number and online customers inquiries. According to Wells Fargo, the English and Bilingual teams were both part of the origination group.

40.     In or about end of year of 2021, Wells Fargo rolled out a pilot program in San Antonio that created a hybrid service group ("Pilot"). Wells Fargo has stated that the "purpose of the Pilot was to combine the servicing and origination functions to identify Wells Fargo customers that might be in a position to refinance an existing mortgage when they call in to service their account and provide them with options within Wells Fargo to retain business that might otherwise go to a different institution. The current Wells Fargo model divided the servicing of current loans and the origination of new loans with different departments; therefore, a customer would have to be transferred to a separate department to refinance an existing loan. The Pilot meant to conflate

these tasks into one call, with one consultant, and make it more efficient for Wells Fargo to retain a customer's business."

41.     According to Wells Fargo, "The compensation model for the employees participating in the Pilot was adjusted from commission-based model to a 'guarantee' because, as participants in the Pilot, employees would have to forego the opportunity to make commissions during the additional weeks of training that the Pilot would require, and the Pilot was a new initiative without any available data to develop an accurate assessment of the number of commissions that Pilot employees could expect. Therefore, Pilot employees were provided a 'guarantee' based in part on their historical performance from a 3-month period (September-November 2021) to offset the reduced commission opportunities."

42.     Wells Fargo acknowledges that it made a firm and universal policy decision to permit only members of the English team to join the Pilot program.

43.     Wells Fargo informed the Equal Employment Opportunity Commission, without any documentary support, that it made this policy decision because "staffing for the pilot program was based on call volume for retention services, and there was very little Spanish-language call volume in that regard" and "there was a business need to keep the Bilingual team in their queue to service the Spanish-speaking customers."

44.     This allegation defies credulity. Spanish-speaking mortgage holders are more likely, not less likely, to call into the bank because Wells Fargo refuses to provide its mortgage documents in Spanish. Spanish-speaking customers are therefore significantly more reliant on telephone conversations with members of the Bilingual team, who must explain in Spanish the underlying documents which are written in only English to consumers who cannot read complicated legal documentation in their native language.

PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT AGAINST WELLS FARGO BANK, N.A. 10

45.     Based on information and belief, a thorough review of Wells Fargo calls received would reveal that Spanish-speakers called in, at least, similar volumes to English-speakers and that Spanish-speaking customers would have similarly benefited from the Pilot program opportunities.

46.     There is no job-related reason that is consistent with business necessity to deny members of the Bilingual team access to the Pilot program. The Bilingual team members are qualified to perform all the tasks of members of the Pilot program. Spanish-speaking customers would have benefited from the goals of the Pilot program in the same way the English-speaking customers did. If Spanish-speaking customers were diverted to the Pilot program at the same rate as English-speaking customers, members of the Bilingual team could have joined the Pilot program at the same rate as members of the English team.

47.     Wells Fargo also claims that its Pilot program is non-discriminatory because it was created by Hispanics. This is not the relevant inquiry, and ignores Supreme Court precedent. *See Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 78 (1997) ("Because of the many facets of human motivation, it would be unwise to presume as a matter of law that human beings of one definable group will not discriminate against other members of that group.").

48.     Wells Fargo also claims that its Pilot program is non-discriminatory because the English group includes Hispanics. Again, this is not the relevant inquiry, and ignores Supreme Court precedent. *See Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1753 (2020) ("The consequences of the law's focus on individuals rather than groups are anything but academic. . . . It's no defense for the employer to note that, while he treated that individual woman worse than he would have treated a man, he gives preferential treatment to female employees overall."). Moreover, Plaintiffs assert both disparate treatment and disparate impact claims. In a disparate impact claim, the relevant group is the individuals denied entry into the Pilot program, all of whom are Hispanic and

PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT AGAINST WELLS FARGO BANK, N.A. 11

are from Mexico or other Central and South American countries. A disparate-impact claim targets employer practices that "have a disproportionately adverse effect on minorities." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). In other words, if a facially neutral policy "in fact fall[s] more harshly on one group," that is unlawful disparate impact. *Garcia v. Woman's Hosp. of Tex.*, 97 F.3d 810, 813 (5th Cir. 1996) (quoting *Int'l Bhd. Of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977)). Simply because some members of the English group happen to also be Hispanic is not the end of inquiry and does not invalidate a disparate impact or a disparate treatment claim.

49.     Wells Fargo's own internal policies make clear that many Spanish-only speakers call in for mortgage and/or retention services. The Bilingual team supervisor provides each team member with a laminated policy handout intended to target Spanish speakers for predatory services when they call in with servicing requests. This handout instructs the Bilingual team to "[a]ssume the transaction will be cash out DO NOT ask if they want cash out," and "DO NOT discuss rate until the customer understands the benefits we can provide." These policies make Wells Fargo more money because, when the customer takes cash out when refinancing, Wells Fargo makes more money, which necessarily reduces the customers' equity.

50.     Not only does this policy target Spanish-speaking customers for disadvantageous refinancing terms, but it undermines Wells Fargo's claim that "there was very little Spanish-language call volume" for refinancing and retention services. Why would an enormous institution like Wells Fargo provide laminated policies targeting Spanish-speakers if they rarely called in?

51.     When Plaintiffs expressed concern that these practices were targeting Spanish-speaking and Hispanic customers, relying on customers' inability to read lengthy legal documents in their first language to trap them in financially detrimental programs, Wells Fargo brushed these

concerns off and doubled down on instructions to obfuscate the downsides of refinancing: "It's not about asking, it's about assuming."

52.     Denying the Bilingual team, including Plaintiffs, the opportunity to join the Pilot program caused significant financial hardship. The mortgage industry, and Wells Fargo in particular, suffered significant losses in 2022.

53.     According to news reports, in 2021, Wells Fargo originated 376,000 loans — the fourth-biggest number nationally — for a total amount of $159 billion. However, 2022 proved a difficult year for the mortgage industry as a whole as interest rates soared. For example, Wells Fargo originated $14.6 billion in mortgages from October to December 2022, down 32% quarter-over-quarter and 70% year-over-year. Refinancings fell to 13% of the portfolio in Q4 2022, compared to 59% in Q4 2021. Wells Fargo's total originations declined 47% in 2022.

54.     These disastrous mortgage results devastated Plaintiffs' income in 2022 and beyond. The Bilingual team, including Plaintiffs, are paid mostly on commission, and when the mortgage industry crashed, so did their compensation. If Plaintiffs and the Bilingual team as a whole had been permitted to join the Pilot program in equal numbers to the English team, however, they would have received guaranteed commissions based on their Q4 2021 performance, substantially increasing their wages for all of 2022 and beyond.

55.     Wells Fargo laid off some members of the English-only team in February 2023 "due to market conditions"—leading to Wells Fargo's eyebrow-raising claim that exclusion from the pilot program actually "benefitted" the Bilingual team members. It is important to note what these "market conditions" were: an enormous increase in the mortgage interest rate that led to a substantial decrease in the commissions the Bilingual team members earned over a long period of time. The Bilingual team members earned substantially less than the pilot program members for

over a year because, quite simply, fewer consumers were buying homes when faced with such unfavorable mortgage rates.

56.    It is ironic that Wells Fargo thinks the Bilingual team members should be grateful to still have their jobs when the earnings associated with these jobs has decreased substantially— which, critically, did not happen to the Pilot program members because their commissions were guaranteed.

57.    In short, Wells Fargo admits that it created a policy whereby Bilingual team members were not permitted to join the Pilot program. This policy intentionally discriminates again Hispanic employees, and employees from Mexico. Alternatively, because all of the Bilingual team members, including Plaintiffs, are Hispanic and from Mexico, this policy disproportionately impacts Wells Fargo Bilingual team members based on their national origin and race.

58.    When Bilingual team members expressed concerns that they were being discriminated against because of their national origin and race, Wells Fargo management suggested they overlook the past and accept that the opportunities given to the English teams were never meant for the Bilingual team.

59.    Wells Fargo cannot show that the policy is job related and consistent with business necessity, and therefore the policy violates Title VII of the Civil Rights Act.

60.    Plaintiffs can show there is an alternative way to serve the stated needs that has less disparate impact on Hispanics, but Wells Fargo refused to implement it, and therefore the policy violates Title VII of the Civil Rights Act. As one example, if Wells Fargo recognized that many Spanish-only customers call in for mortgage and/or retention services, it would have seen the value in having Bilingual employees in the Pilot program to speak to these customers. By disregarding

the needs of its Spanish-only customers, Wells Fargo created a Pilot program that it falsely claims needed no Bilingual team members.

61.     The disparity between the English team and the Bilingual team is clear: by the end of December 2022, English-language team members closed on average 80 loans due to the programmatic opportunities created for them, while Bilingual team members were given the opportunity to close only eight.

## CLASS ACTION ALLEGATIONS

62.     Plaintiffs bring this action as a class action under Federal Rule of Civil Procedure 23 and Title VII of the Civil Rights Act.

63.     **Class Definition**: Plaintiffs bring this action on behalf of themselves and all other similarly situated employees. Plaintiffs seek to represent a class initially defined as: "All members of Wells Fargo's Bilingual team of Hispanic ethnicity or from Mexico or other Central and South American countries employed by Wells Fargo during its Pilot program for Mortgage Consumer Direct Sales Consultants, beginning in or around December 2021 to the present who were not permitted to participate in the Pilot program."

64.     Plaintiffs' claims satisfy the numerosity, adequacy, commonality, typicality, predominance, and superiority requirements of a class action.

65.     **Numerosity and Class Size**: The class contains more than twenty current and former Bilingual team members, and joinder is therefore impracticable. The precise number of class members and their addresses are readily determinable from the books and records of Defendant.

66.     **Adequacy**: Plaintiffs are affected employees who are or were members of the Bilingual team. They are of Hispanic ethnicity and are from Mexico or other Central and South

PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT AGAINST WELLS FARGO BANK, N.A. 15

American countries and are or were employed by Wells Fargo during its Pilot program for Mortgage Consumer Direct Sales Consultants. They are thereby members of the class. Plaintiffs are committed to pursuing this action and have retained counsel with experience prosecuting complex employment litigation, including violations of Title VII. Accordingly, Plaintiffs are adequate representatives of the class and have the same interests as all of the members. Plaintiffs will fairly and adequately protect the interests of the absent members of the class.

      67.    **Common Questions of Law and Fact**: There are questions of fact and law that are common to the class and predominate over any questions affecting only individual class members. The questions of law and fact common to the class arising from Defendant's actions include, without limitation, the following:

    a.   Whether Wells Fargo created a Pilot program guaranteeing commissions to members of the program that excluded members of the Bilingual Team.

    b.   Whether Wells Fargo's Pilot program intentionally discriminates against Hispanic employees and/or employees from Mexico or other Central and South American countries.

    c.   Whether the Pilot program is a specific, facially neutral policy or practice of Wells Fargo.

    d.   Whether the Pilot program caused a disproportionately adverse effect on the Bilingual Team, all of whom are of Hispanic ethnicity and are from Mexico or other Central and South American countries. By denying Plaintiffs a guaranteed commission that was offered to English team members, Plaintiffs received significantly less pay in 2022 and beyond;

    e.  Whether Wells Fargo has implemented a Pilot program with significant financial benefits to which it admits the Bilingual team cannot gain entry, excluding the Bilingual team from the Pilot program has "a causal connection to a class based imbalance . . . .";

    f.  Whether Wells Fargo can show that barring Bilingual team members from the Pilot program was job related or consistent with business necessary;

    g.  Whether Plaintiffs can show that Wells Fargo's business needs could have been served by permitting Bilingual team members to join the Pilot program in equal proportions to English team members, but Wells Fargo refused it;

    h.  Whether because Wells Fargo implemented a policy excluding members of the Bilingual team, including Plaintiffs, from joining the Pilot program, Plaintiffs suffered lost income and other economic and non-economic damages and the appropriate calculations of those damages;

    i.  The appropriate punitive damages due.

68.    **Typicality**: Plaintiffs' claims are typical of the claims of all members of the class. Plaintiffs are current or former members of the Bilingual team who are of Hispanic ethnicity who are from Mexico or other Central and South American countries and were ineligible to join the Pilot program and thereby receive guaranteed commissions.

69.    **Nature of the Proposed Notice**: Plaintiffs propose that, should the Court certify the class, notice be sent to class members via first class mail and email. The names and contact information of class members are readily determinable from the books and records of Defendant.

70.    Rule 23(b) Requirements: The common questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to

PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT AGAINST WELLS FARGO BANK, N.A. 17

considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of the Title VII disparate impact claims.

71.   A class action is the superior method for the fair and efficient adjudication of this controversy. Defendant has acted or refused to act on grounds generally applicable to the class. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of class members to protect their interests.

72.   Further, class action treatment of this action is authorized and appropriate under Title VII of the Civil Rights Act and 42 U.S.C. § 1981.

### FIRST CAUSE OF ACTION
### Discrimination Under 42 U.S.C. § 1981

73.   Plaintiffs incorporate by reference all of the allegations made in the preceding paragraphs.

74.   The Supreme Court has had "little trouble in concluding that Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics. Such discrimination is racial discrimination that Congress intended § 1981 to forbid, whether or not it would be classified as racial in terms of modern scientific theory." *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987).

75.   "Clearly, discrimination on the basis of a complainant's Hispanic ethnicity is actionable under § 1981." *Loco Brands, LLC v. Butler Am., LLC*, No. 6:18-CV-69-JDK-KNM, 2020 U.S. Dist. LEXIS 57173, at *11 (E.D. Tex. 2020); *see also Vill. of Freeport v. Barrella*, 814 F.3d 594, 598 (2d Cir. 2016) ("'race' includes ethnicity for purposes of § 1981, so that discrimination based on Hispanic ancestry or lack thereof constitutes racial discrimination under

that statute.); *Drawsand v. Palletized Trucking, Inc.*, 2019 U.S. Dist. LEXIS 40819, 2019 WL 825847 at * 2 (S.D. Tex., January 24, 2019) ("Section 1981 . . . applies to discrimination on the basis of race or ethnicity."); *Wantou v. Wal-Mart Stores Texas, LLC*, 2018 U.S. Dist. LEXIS 40082, 2018 WL 1308221 at * 8 (E.D. Texas, February 15, 2018) ("Thus, while discrimination purely on the basis of national origin does not create a cause of action under § 1981, the Fifth Circuit has held that a complaint by Mexican-Americans alleging racial and ethnic discrimination 'clearly states a cause of action' under the statute.") (quoting *Alvarado v. El Paso Indep. School Dist.*, 445 F.2d 1011 (5th Cir. 1971)).

76.     Plaintiffs are Hispanic. Therefore, they are members of a class protected by Section 1981.

77.     Plaintiffs were qualified both for their positions and for the job duties required for the Pilot program.

78.     Plaintiffs were subject to an adverse employment action whereby they were refused entry into the Pilot program and denied substantial commissions that would have been guaranteed under the Pilot program.

79.     Plaintiffs were treated less favorably than members of the English team based on their race.

80.     As a result, Plaintiffs suffered lost income and other economic and non-economic damages.

81.     Plaintiffs incorporate by reference all of the allegations made in the preceding paragraphs.

## SECOND CAUSE OF ACTION
### National Origin and Race Discrimination Under Title VII of the Civil Rights Act: Disparate Treatment

82.     Plaintiffs incorporate by reference all of the allegations made in the preceding paragraphs.

83.     Title VII makes it illegal for an employer to "limit, segregate, or classify his employees or applicants . . . in any way which would deprive or tend to deprive any individual of employment opportunities . . . because of such individual's . . . race . . . or national origin." 42 U.S.C. § 2000e-2(a)(2).

84.     Race and national origin claims are closely intertwined and correlated. Plaintiffs' national origin is Mexican and other South and Central American counties, and their race and ethnicity is Hispanic. See generally Jatoi v. Hurst-Euless-Bedford Hosp. Auth., 807 F.2d 1214, 1218 (5th Cir. 1987) ("We have recognized the difficulty in distinguishing discrimination based on national origin from that based on race."); see also Vill. of Freeport v. Barrella, 814 F.3d 594, 598 (2d Cir. 2016) ("'race' includes ethnicity for purposes of § 1981, so that discrimination based on Hispanic ancestry or lack thereof constitutes racial discrimination under that statute. We also hold that 'race' should be defined the same way for purposes of Title VII."); Alonzo v. Chase Manhattan Bank, N.A., 25 F. Supp. 2d 455, 459 (S.D.N.Y. 1998) ("Whether being Hispanic constitutes a race or a national origin category is a semantic distinction with historical implications not worthy of consideration here.").

85.     Plaintiffs are Hispanic who are from Mexico. Therefore, they are members of at least two protected classes: race (Hispanic) and national origin (from Mexico or other Central and South American countries).

86.     Plaintiffs were qualified both for their positions and for the job duties required for the Pilot program.

87.      Plaintiffs were subject to an adverse employment action whereby they were refused entry into the Pilot program and denied substantial commissions that would have been guaranteed under the Pilot program.

88.      Plaintiffs were treated less favorably than members of the English team based on their race and/or national origin.

89.      As a result, Plaintiffs suffered lost income and other economic and non-economic damages.

## THIRD CAUSE OF ACTION
### National Origin and Race Discrimination Under Title VII of the Civil Rights Act: Disparate Impact

90.      Title VII makes it illegal for an employer to "limit, segregate, or classify his employees or applicants . . . in any way which would deprive or tend to deprive any individual of employment opportunities . . . because of such individual's . . . race . . . or national origin." 42 U.S.C. § 2000e-2(a)(2).

91.      Race and national origin claims are closely intertwined and correlated. Plaintiffs' national origin is Mexican and other South and Central American counties, and their race/ethnicity is Hispanic; both are plainly protected. *See generally Jatoi v. Hurst-Euless-Bedford Hosp. Auth.*, 807 F.2d 1214, 1218 (5th Cir. 1987) ("We have recognized the difficulty in distinguishing discrimination based on national origin from that based on race."); *see also Alonzo v. Chase Manhattan Bank, N.A.*, 25 F. Supp. 2d 455, 459 (S.D.N.Y. 1998) ("Whether being Hispanic constitutes a race or a national origin category is a semantic distinction with historical implications not worthy of consideration here.").

92.      Furthermore, the statute provides that an unlawful employment practice based on disparate impact is established when either an employee shows that an employment policy causes

such a disparate impact and the employer fails to show "that the challenged practice is job related

. . . . and consistent with business necessity," or the employee shows there is an alternative way to

serve the stated needs but the employer refuses it. 42 U.S.C. § 2000e-2(k)(1)(A).

93.     Wells Fargo created a Pilot program guaranteeing commissions to members of the

program. This Pilot program is a specific, facially neutral policy or practice of Wells Fargo.

94.     The Pilot program caused a disproportionately adverse effect on the Bilingual

Team, including Plaintiffs, all of whom are of Hispanic national origin and race. By denying

Plaintiffs a guaranteed commission that was offered to English team members, Plaintiffs received

significantly less pay in 2022 and beyond.

95.     Because Wells Fargo has implemented a Pilot program with significant financial

benefits to which it admits the Bilingual team cannot gain entry, excluding the Bilingual team from

the Pilot program has "a causal connection to a class based imbalance . . . ." *Anderson v. Douglas

& Lomason Co., Inc.*, 26 F.3d 1277, 1284 (5th Cir. 1994).

96.     Wells Fargo cannot show that the barring Bilingual team members from the Pilot

program was job related or consistent with business necessary.

97.     Plaintiffs can show that Wells Fargo's business needs could have been served by

permitting Bilingual team members to join the Pilot program in equal proportions to the English

team members, but Wells Fargo refused it.

98.     Because Wells Fargo implemented a policy excluding members of the Bilingual

team, including Plaintiffs, from joining the Pilot program, Plaintiffs suffered lost income and other

economic and non-economic damages.

## ATTORNEYS FEES AND COSTS

99.     Plaintiffs are entitled to an award of attorney fees and costs under Title VII.

PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT AGAINST WELLS FARGO BANK, N.A.  22

## **JURY DEMAND**

100.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs request a trial by jury on all issues.

## **PRAYER**

101.    For these reasons, Plaintiffs ask for judgment against Defendant for the following:

a.  Actual, consequential, and compensatory damages;

b.  Exemplary and punitive damages;

c.  Pre-judgment interest if, as, and when allowed by law;

d.  Reasonable and necessary attorney's fees;

e.  Costs of court;

f.  Post-judgment interest; and

g.  Any other relief to which Plaintiff may be entitled, whether in law or equity

Respectfully submitted,

/s/ Lawrence Morales II
Lawrence Morales II
State Bar No. 24051077
lawrence@themoralesfirm.com
Allison Sarah Hartry
State Bar No. 24083149
ahartry@themoralesfirm.com
**THE MORALES FIRM, P.C.**
6243 IH-10 West, Suite 132
San Antonio, Texas 78201
Telephone: (210) 225-0811
Facsimile: (210) 225-0821

***ATTORNEYS FOR PLAINTIFF***

PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT AGAINST WELLS FARGO BANK, N.A.   23

## CERTIFICATE OF SERVICE

I hereby certify that on July 21, 2023, pursuant to the Western District of Texas Administrative Policies and Procedures for Electronic Filing governing amended complaints that add parties, I traditionally filed the foregoing instrument with the Clerk of the Court via the United States Postal Service.

/s/ Allison S. Hartry
Allison S. Hartry